v. Caldwell County, TX, et al. Thank you, Your Honor. Counsel, you can proceed. You've allotted 15 minutes for your opening argument. Thank you, Your Honor. May it please the Court, my name is Eric McGee. I represent what I call four classes of defendants in this case. The first one is Trey Hicks. He's the County Court at Law judge in Caldwell County, Texas. There's four Justices of the Peace, the Sheriff of Caldwell County, and then the county itself. In this case, we think that the District Court erroneously granted a preliminary injunction. As the plaintiffs lack standing, one, and if the court moves past that, they fail to demonstrate a substantial likelihood that magistration in Caldwell County violates the First or Fourteenth Amendments. I think it's really important to make a clear distinction here throughout the arguments from the plaintiffs in this case, all news organizations or civic organizations in Caldwell County. They refer to it in two separate ways. One, they refer to it as magistration, but then they also blur the lines here and refer to it as bail hearings. And I think there's a very clear distinction between what those are, especially when you look at each one of the defendants in this case. The county itself does not have any policies or procedures related to bail procedures because a county is governed by the Commissioner's Court under very specific Texas statutes and don't have any responsibility or role in criminal proceedings within a county. The sheriff himself, again, has no duties related to criminal bail hearings or any other criminal trial hearings other than providing security for those functions. Here, the plaintiff's arguments are that the sheriff has a blanket policy of denying access to bail hearings or magistrations. And I think the distinction needs to be made very clear. There is no bail hearings occurring. There's a specific statute in Texas in the Code of Criminal Procedure, Article 15.17, that actually provides what is required upon the initial arrest of individuals. If you are arrested under an arrest warrant where probable cause has already been established, then you go under the Code of Criminal Procedure 14.06. And then in 14.06, it says the procedures that are established in 15.17 must be followed if you've been arrested by a warrant. 15.17 is your warrantless arrest where someone is arrested for a DWI, let's say, last night, or any other provision where they were arrested without probable cause. So under that 15.17 hearing, the first thing that a magistrate judge does, and that can be a city magistrate, that can be a JP, that can be any judge sitting there that conducts magistration. And the term magistration is not one that's even defined by Texas law or even really in any case precedent. It's been referenced over the years as magistrations or to be magistrated or magist-sized. But there's not actual definition of that. Counsel, just because time is running, is bail set at these hearings? At the very end, a bond is set, yes. Okay, so you said this is not a bail hearing. Correct. You follow? Yeah, bail is set. How do you—I don't understand your distinction there. So you go through all of the steps of advising someone of what their rights are under 15.17. At the end of that, there's a formulation that's been set by the Texas Supreme Court and other judicial institutions in Texas that say here's kind of the formula that you follow, and then a bond is set for how someone gets out. Certain crimes would get you a PR bond, and other things would get you a different bond. So the bail is formulaic? In a sense, yes. You follow a very clear guidelines of how that is based on the charges, not even charges, the accusations that have been brought against you. This is not an arraignment. The person makes no plea. The person makes no argument. I think of a bail hearing as one where a bond has been set by the magistrate, and whether you have retained counsel or whether you've been appointed counsel, that attorney moves for some type of bail hearing, whether that be a bail reduction hearing, whether that be a request that the person no longer be detained and released on their personal recognizance. That's where you have the opportunity to present evidence and arguments and even cross-examine witnesses if necessary related to your bail reduction hearing. Why is any of that relevant to whether or not the parties on the other side have been injured? Why is that relevant to the injury in fact prong of this analysis? Because the purpose of 1517 is to get someone in and out of custody as quickly as possible. The statute itself, the Code of Criminal Procedure, makes sure that you are magistrated without a necessary delay, and then it sets a time frame that it cannot be any longer than 48 hours. So when you go to a process of where, as they're saying, the press and the public have the right, a First Amendment right to be there, and they specifically say that one of the allegations against us is that we did not provide the press or public with notice when the magistration proceedings would occur or the names of the arrestees of who would be magistrated. Well, that defeats the entire purpose of the Code of Criminal Procedure 1517 of creating a situation of unnecessary delay because now you're having to provide notice and the names of the person. I conducted my self-magistrate proceedings for approximately three years, and it had to be done very quickly, but it wasn't done in a way where the parties on our other side would not have been able to have access to it. So I guess I don't understand the argument that because it needs to be processed within 48 hours, that that somehow runs afoul of unnecessary delay. So the analogy that I would give is if a magistrate judge shows up today in these small counties, they may not have anybody to magistrate today, and they may call over to the sheriff's office and ask. The statute allows that the sheriff brings the arrestee to them to be magistrated, and federal courts have recognized for years that that could be anywhere. That may be at the police desk at the city police department. That may be at the county sheriff's office. That even occurs at magistrate judges, federal judges, and state judges' homes at different hours of the night. I've even had a magistrate who has been on a death justice of the peace who was serving as magistrate who was at a death inquest and had to have someone bring the magistrate, I mean bring the arrestee over to where they were conducting their death inquest because of that 48 hours. Very, very tongue twisted. Specific examples, but is the argument on the other side that there is a blanket closure? There's not a blanket closure. It is how magistration occurs throughout the state of Texas, and it's not that there's ever, there's not an automatic assumption that they even be public or that there is a First Amendment right. It's the opposite. They haven't even shown that these types of initial informal procedures are required under the First Amendment. Actually, all of the case law that they have cited don't deal with Article 1517 at all. The only case that they have cited that deals with 1517 specifically only talks about when the right to an appointment of counsel attaches to that person. Does it attach before magistration or at magistration? It attaches at magistration. That's the process of where the magistrate under 1517 is required to notify the arrestee that they have the right to counsel, that then there is a specific procedure that they have to go through if they are asking that they cannot afford counsel and that they have one appointment. Yes, and perhaps Judge Douglas' is also that, I mean, isn't that then part of the critical phase of the pretrial process? In other words, counsel attaches at critical points of the process, and it's been held that magistrations are one such example of those critical phases. So would that not militate in the plaintiff's favor? Except the court in that case said that's the step of where it attaches, and that was the case where there was a six-month delay, and that arrestee continued to ask over and over for their attorney. All right, well, what do you do with Chagra, the Chagra case that said that the press has a right to notice of bail, revocation, or adjustment hearings? Isn't that the other bookend? And Chagra's in our favor. How so? This is not a bail reduction hearing or a revocation hearing. This is no hearing. Doesn't Chagra suggest that if a bail reduction hearing is subject to the First Amendment, so would a bail hearing that sets initial bail? No, that's not what Chagra says, because in Chagra. I'm going to interrupt now because I'm going to quote Chagra. Okay. And then I would ask you to answer it. Chagra says, Pre-trial release proceedings require decisions that attract significant public interest and invite legitimate and healthy public scrutiny. We therefore agree with the Third Circuit's conclusion that the same societal interests that mandated a First Amendment right of access to criminal trials in Richmond newspapers apply to pre-trial criminal proceedings, and we extend this to bail reduction hearings. Correct. In Chagra, that was a pre-trial criminal bail reduction hearing. Magistration is not a hearing of any kind. There's no record taken except for the one specifically described in 1517. There's not a court report of presence. There's no record taken except for the procedures of 1517. There is no argument from any counsel. There's no argument from an arrestee himself. There is no presentation of evidence, witnesses, or any type of testimony at all. Actually, an arrestee doesn't say anything during a magistration unless they answer specific questions. Is it a pre-trial criminal proceeding? No. Are they there voluntarily, these defendants? It is an informal procedure, and I think the way I make the distinction is— It's an informal procedure of somebody who has been arrested and charged with a crime. Correct. But you're not before the criminal court in a criminal proceeding. You are before a neutral magistrate who is making determinations just like a magistrate would make of whether you have probable cause for an arrest or for anything else that the press would not be public for to determine whether an arrest warrant affidavit makes that requirement. Counsel, I'm sorry. I need to hear your standing argument. You started saying that the newspapers and the organizations do not have standing. Are you arguing that they have not suffered an injury, that any injury is not fairly traceable to the policy, or that it cannot be redressed by a favorable decision? Explain your standing argument, please. I'm saying that they have not—I'm saying the first two. They have not suffered an injury that is any clear First Amendment right because 1517 does not—this is not in the same language of all the cases that have been cited. You have to have a case or controversy in order to establish standing. The first thing is you have to demonstrate that you have had some type of injury. They have not had an injury because the public and the press do not serve any function or do anything during magistration, completely different from a bail reduction hearing in front of the criminal court who will be hearing the criminal matter, whether they are arguing and presenting evidence and testimony and even arguments from your attorney related to a bail reduction hearing or a bail revocation hearing or any other type of criminal court decision in a criminal proceeding. How is a news organization to report on this hearing or this proceeding, whatever it is, without being present? It's not a matter of First Amendment right. They cannot report on how a magistrate made the decision of whether to issue this arrest warrant or whether probable cause was established. That's not a procedure that's set forth by the Code of Criminal Procedure that sets up a criminal court proceeding. But they're bail set. And that's set based on just your bond amount of what you've been accused for. They certainly have the right to say, I mean, every news story you read, so-and-so was arrested, da-da-da-da, and released on $50,000 bond. That's part of every story that's in the newspaper. And all of that's public record immediately upon the issuance of that bond and someone's arrest. Are you contending, is there anything about traceability or addressability specifically? You kind of indicated at the beginning of your argument that some of these defendants were not proper defendants. In other words, are you contending that some of these need to be dismissed because they can't have any effect on the policy? Well, that's true. I mean, the county – Tell me which defendants are proper here in terms of – Well, the county and the sheriff both do not make determinations as to where magistrations occur. The sheriff may have – it may be easier to have it at the sheriff's office so that he doesn't have to transport someone somewhere. But Article 1517 actually says the exact opposite. It says that the accused must be brought before the magistrate either in person or through video conference without unnecessary delay but no later than 48 hours. This has been an attack not on how Article 1517 magistration occurs but more on an attack on the statute itself. And I'm out of time. I'd reserve my five minutes. You've saved time for your rebuttal, counsel. Thank you. Thank you. We'll hear from counsel for Texas Tribune et al. Thank you, Your Honor. May it please the Court. Scott Wilkins on behalf of the plaintiffs' appellees. The central issue in this case is whether there is a presumptive First Amendment right of access to bail hearings. And the answer to that question is clear. Based on Supreme Court precedent, this Court's decisions, particularly the Chagra case, and the unanimous rulings of every other appellate federal and state court to consider the issue of whether there is such a right of access to bail hearings. There is not a single case that can be pointed to going the other way here. And I think that is because of the central importance of bail hearings to the criminal justice system which has only become more pronounced since Chagra was decided 40 years ago. Before you go farther, let's talk about preliminaries a little bit. Sure. What do you make or how do you respond to counsel's argument that the county and the sheriff shouldn't be defendants because they don't have anything to do with this? Well, all of the individuals named in the lawsuit are policymakers for the county. Do they have anything to do with where magistrations occur or how magistrations are conducted? Yes. The magistrates determine where magistration occurs. At least they have the power to do so under the statute under 1517. The statute expressly says that the sheriff must bring the arrestee to where the magistrate is located. And so both the sheriff and the magistrate participate in where that magistration then occurs because they both have to, the magistrate has to figure out where the magistrate would be located and the sheriff has to go to that place. I guess I'm talking about redressability and I'm thinking about Dave's. Yes. We went through and in painstaking detail figured out which officials had anything to do with it and which ones didn't. I take it your contention is that all these defendants are proper, but what about redressability against the sheriff? Well, so yes, Your Honor, and Dave's does deal with many of these issues. Right now, the arrestees are pretty much always located in the jail when magistration occurs. The magistrates generally appear remotely as authorized by state statute. They sometimes appear in the jail in person. So because the arrestee is in the jail, the sheriff has control over who is permitted to enter the jail for magistration. And indeed, in this case, you'll see in our factual allegations, several of the requests to attend magistration were made at the jail of the jailers who responded that the policy was that you could not enter the jail for the purpose of observing magistration. So there you have the sheriff and the sheriff's policies being directly involved. And, of course, you have the magistrates directly involved because they determine where magistration will happen. And so presumably, if they said, you know, bring the arrestee to this courtroom for magistration and the public would be allowed to enter the courtroom, that's what would happen. But they haven't done that in this situation. What about the county? Well, I mean, the county, I think under Monell, I mean, because the magistrates and the sheriff are final policymakers for the county, the county is a proper defendant in this case under municipal liability. And so just if I can continue on, the First Amendment merits here, but I'm happy to address any other issues the court would like me to. But, you know, looking at the precedents, the Chagra case, which the court had already asked about, and applying the experience and logic test here, the result here is clear. There is a First Amendment right of access. A presumptive right of access to bail hearings. Can I go down on that a bit? Yes. Chagra was obviously decided a few decades before the U.S. Supreme Court decided or implemented the experience and logic test. And the experience part was the place and process historically open to the press. So I'd like you to address that. And the logic part is does the public play a significant positive role? But the experience question, because these hearings, as Appellant has said, have not historically been open to the press. Yes, Your Honor. Let me address that. So in terms of timing, Chagra was decided after the Richmond newspapers case, which is where Justice Brennan and his concurrence set out the experience and logic test, which then a couple of years later the court formally adopted. And although Chagra didn't use the words experience and logic, the decision certainly tracks that analysis. It first analyzes experience and then it analyzes logic. And it comes to, I think, the passage that, Judge Rito, that you read earlier, which is that the same societal interests that mandated public access to trials applies to bail reduction hearings. But on the experience prong, as set forth in Richmond newspapers and then in later Supreme Court cases, it's important to look at three different things. So history is not the only relevant information to look at under the experience prong. As Justice Brennan makes clear, and as the court later made clear in Press Enterprise 2, the courts should look to the history for sure. They should look to contemporary state practice under the experience prong, and they should also look to court decisions under the experience prong. Justice Brennan looked at all three. And in Press Enterprise, when the court was analyzing the experience prong, the court also looked to contemporary state practice and court rulings. And here you have history that goes back to 16th century England. You also have, and we detail this in our brief, you have contemporary state practice that has moved very significantly in the direction of open bail hearings and that currently court decisions cover probably about 25 states, and there are eight more states that have moved toward mandating open bail hearings by court rule or statute. And that's not to say, Your Honors, that they were closed. It's just to say that now there is a mandatory openness by some rule or other. But are these actually bail hearings? Yes, they are, Your Honor. The counsel opposite says it's formulaic and the bond is set, and then later they have an actual hearing that would be covered by Chagra obviously, but that that's not what these are. Yes. The effort to minimize the importance of these hearings, I don't think it can be taken seriously here because for many criminal defendants, this is their only appearance before they will see a judicial officer for a plea hearing. This is the only bail determination that they receive. And if you look at the Supreme Court's decision in the Rothnery case, which dealt with the exact same procedure here in Gillespie County, in that case it was a two-minute hearing on either side of a glass window. We cite the relevant parts of the record in that case. The court said there that is the beginning of adversary proceedings. It's where the detainee learns of the charges. It is where the detainee is subjected to detention pretrial. And so this is a very important moment. It's the first formal proceeding. Those are the Supreme Court's words in a criminal prosecution. So the notion that this is somehow informal because it's short just doesn't really work here. Are you contending that you get access because the bail is set or more generally than that? Well, Your Honor, I think bail is certainly, it's probably the most significant part of this hearing. There are other elements. There is a probable cause determination. And the judge, the magistrate is required to inform the arrestee of certain rights and also to assist the arrestee in obtaining counsel, indigent appointment of counsel if requested. And so bail is at least enough, I would say, to require a First Amendment right of access here. But it's publicly available immediately afterward. Does that ameliorate the concern? Well, no, Your Honor, for a couple of reasons. First, even though these may be quite short, the statute, state statute, actually requires the magistrate to engage in an individualized determination of bail and identifies various factors. The fact that that may not actually happen is precisely why public access, is an example of why public access is important here. How would you envision this working, though, in terms of notice given and that sort of thing? Well, Your Honor, we've been trying to work on this with the defendants. By the way, there has been no stay was sought to the district court's order. So the preliminary injunction has been complied with since March with certainly no complaint. There has been Zoom access provided. I'm not aware of any even claimed interference that that has with the way the proceedings are conducted. And while yes, and the district court recognized that, if a magistrate wants to close a magistration and so then would have to go through the constitutional requirements before closure, that that may be difficult given the 48-hour time limit. But, for example, the courts have made clear that you don't have to have briefing on the question of closure. You could, for example, in this case, because it's a 48-hour requirement, you could have a notification on the website, which is where they currently notify people of the time of magistration each day when it occurs. You could have a notification that says we're thinking of closing this one and we will entertain a Zoom hearing, a short one at this time. There are ways to work around it. And that's why the district court in its preliminary injunction ruling said that flexibility is needed and that the district court did not specify exactly how it had to occur because the court recognized that this would cause some challenges logistically. The — to the extent — I mean, the — I just want to underscore, you know, how important these hearings are and just go back to a second. I mean, I didn't address the logic prong, but all of those interests that are identified in Chagra and in the Supreme Court cases, all of those interests apply here and also apply all the more strongly because there's no jury, no one else is present. Typically, in these magistrations, you have the magistrate and the arrestee, and that is all. And no one can see what happens. And although there may be a record, as required by statute, that's released a few days later with basic information like the amount of the bail, there is — a lot of information is lost and can only be obtained by watching the proceedings. And, of course, one of the main purposes of the First Amendment right of access is to discourage potential abuse of judicial power, and that is only done when the magistrate or judicial officer knows that they are being watched by the public. And that obviously wouldn't happen here without a public right of access. You also have the fundamental purpose of informing — an informed discussion of governmental affairs. People actually know what happens in these hearings. You have a heightened respect for the judicial process. That's a fundamental value under the experience of logic test, under the logic prong. And you have community therapeutic value. All of those apply here as they did in the Chagra case, and that's why I think the district court said that, you know, yes, Chagra expressly addressed bail reduction hearings, but its reasoning applies exactly in this case. But Chagra also says this is — it kind of put informal proceedings to the side. I mean, it sort of said nothing about that is illegal. And the question for us, I guess, is where does magistration fall? Yes, Your Honor. I want to address what the court meant by informal in Chagra. If you look at the procedures that it describes when it uses the word informal, it is clearly talking about ad hoc departures from some kind of rule. It says like — it uses the word sometimes. Like a magistrate sometimes calls the jail. You know, it sometimes occurs in a police station. This is not — as I sort of by earlier — as I earlier said in relation to the Rothkari case, this is not — this is pretty much as formal a procedure as you can get in the sense that it is set forth by state law. Every single one has to fulfill certain duties. The actors here, the sheriff and the magistrate, it's very clear. It has to happen the same way every single time. And that is not what the Fifth Circuit was addressing as informal in the Chagra case. I think there, as the court noted, it was concerned with — it did not want its decision to prevent the expeditious release of the arrestees. But that is not at issue here. There's been no claim, and it's certainly not true under the preliminary injunction that's been in effect now for months, that providing access to the public would delay the release of a detainee. And we certainly would not want that to be the case. We understand that desire, but that is not, you know, at issue in this case. Is it the language that you're relying on in Chagra that you're just discussing the quote, therefore, while the public and press may request access to bail hearings held in court or other places that traditionally are open to the public, nothing in this opinion should be construed as forbidding the more informal bail procedures discussed above? That is the language that comes at the end of the decision, Your Honor. But that refers back to the same wording of informal procedure above. And, you know, it's a couple of pages early. I don't have it in front of me. But that's where the court uses the word sometimes, and it's pretty clear to me that what the court is talking about is, you know, occasional departures from a rule, and the court didn't want to prohibit those entirely. The outliers. Yeah, outliers. Right. And what we have here is we're challenging, you know, well, we're not challenging 1517, but 1517 is the rule itself. I mean, that applies to every single case. This is not a departure. They're traditionally open to the public. Are the jails traditionally open to the public? No, Your Honor. I mean, they're not. But I think, you know, one of the important issues in this case, as in others, is that the courts under the Supreme Court's precedents have to look nationwide when they're engaging in the experience prong analysis. And the court made that clear in this case. It's out of Puerto Rico, and we cite it in our brief. My Spanish is not very good. But there they said that you cannot look at Puerto Rico tradition to determine whether openness is appropriate. You have to look nationwide. And so the fact that many counties in Texas choose to locate the arrestees, keep the arrestees in prison during magistration, is not the relevant inquiry under the experience prong. Rather, one has to look nationwide. And we do that. We try to cite as much as we can in our brief to show that actually the practice is not typical in terms of the use of prisons to conduct bail hearings nationwide. Of course, you know, here, if there is a presumptive first amendment right of access, which of course we argue there is, then this policy in Caldwell County clearly violates that rule. This is a per se closure of every single hearing with no determination made on a hearing by hearing basis. As to whether closure is appropriate under the constitutional standard. And that is why we challenge the policy, and we believe that under the first amendment, the county, the defendants, would have to justify each closure under the constitutional rules. Maybe one last point to respond to. And this relates to what we were just talking about a moment ago. But this idea about the formality of the word hearing, that magistration somehow is not a hearing, and therefore it doesn't fall within the first amendment right of access. I think that that type of argument is a very dangerous one because it suggests that the government could take a judicial proceeding out of the scope of the first amendment just by kind of changing the label under state law. Is it called a hearing? Is it not called a hearing? Where is it conducted? How short is it? And that is not the first amendment standard here. And of course, if that were accepted, it would allow the first amendment to sort of be, to fall in the government's hands and would allow an evasion of that, a right that the court has said clearly, that the Fifth Circuit and the Supreme Court have said very clearly, is fundamental to our system of democratic self-government. Thank you, counsel. Thank you. For my last five minutes, I'd like to address a couple of things that he raised. First, the point that he made in their brief that they've cited nationwide cases that deal with bail hearings. None of the cases they cite refer to any type of procedure similar to 1517. Even the El Vocero case out of Puerto Rico that he's discussing is actually a Puerto Rican statute that dealt specifically with the rights of the prosecution and the defendant to introduce evidence and cross-examine witnesses. And actually for the defendant themselves to plead specific affirmative defenses during that type of hearing. That's not what's discussed here. Similarly, the other cases that they've cited in their briefing that deal with bail hearings or bail reduction or revocation hearings or arraignments where there has been a grand jury indictment and formal criminal charges against you, that is not what occurs in 1517. So I just wanted to make that clear in their briefing. We'll stand on our briefing on those issues, but there is no case that they've cited that discusses similarly to 1517 proceedings. The other thing I'd like to just point out to the court is if we go with the plaintiff's analogy here, then you've changed the statute entirely and then grafted new procedures onto a statute that are not required. There is no requirement in 1517 that says the public has right to access, that those hearings have to be conducted in any particular place, that the sheriff is required to then allow access into secured areas of his jail so someone could attend those hearings. Is there anything in 1517 that prohibits access? It doesn't. The only thing in 1517 that says is it actually provides the magistrate with the authority to say where the arrestee must be brought to them. There are other provisions in Texas law that actually talk about the security of the facility and the responsibility of a county sheriff to secure the jail. Here in Caldwell County, there is no public courtroom at the jail of where you could bring someone up front and have a magistrate or public hearing there. That's not what the statute says. It does not require additional steps. Dr. Perappelli said that you didn't request a stay and that these magistrations have been open to the public and taking place without any logistical issues since March. Do you disagree with that? I do disagree with that. We didn't request a stay just because there are sanctionable offenses for requesting a stay when there's been a determination by a court. The Fifth Circuit itself has made very clear requirements for when a stay should be asked and should not be asked for. But as far as... Logistical. Have there been logistical issues? Sure. There have been logistical issues. Those logistical issues are you have magistrations that occur based on the magistration schedule. We're now under a procedure where we have to provide a notice of what time the magistration will occur. Although he's incorrect that the bulk of the magistrates do them by Zoom, that's not correct. Two of the JPs and the county court at law judge conduct these through in person at the jail where the Zoom link is set up at the specified time that the court said we had to provide notice for. Two of the other justices of the peace conduct it through the Zoom. That changes their entire court schedule and proceeding should something come up with an emergency motion or a proceeding or hearing lasts longer than what the time is, then we're scrambling to change those around. The statute says nothing about giving notice and somebody the opportunity to be heard before we close any type of magistration. That's because when you look at... Are they asking to be heard or are they just asking to have access to the proceedings? He did ask to be heard if we determined to close a magistration. He said, you know, that that could be done in a variety of ways. He certainly doesn't want to delay someone being released from jail, but that they could set up, file a quick motion, notify somebody that they're going to close it, and then we could set up a Zoom hearing on the issue of closing something. There is no requirement for a Zoom hearing to close it. And then you have an arrestee. If we notice you to be magistrated today at 8 a.m. and someone comes in at 8.30, the magistrate cannot magistrate that person until tomorrow at 8 o'clock because we didn't notice that there was going to be a hearing at 9 o'clock or 10 o'clock or whatever notice you're setting there. So you've had someone sit there. We have a magistrate that lives right by the jail that they can call and she can come over at 5 p.m. and magistrate people out so people don't sit there overnight and we have to pay for it. My time's up. We would just ask that you reverse. Thank you, counsel.